43 So.2d 540

**SENN v. STATE.**

4 Div. 106.

Court of Appeals of Alabama.

Dec. 20, 1949.

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

J. A. Huey, of Enterprise, and W. R. Martin, of Ozark, for appellant.

CARR, Judge.

The accused was indicted for murder in the second degree and was convicted of the offense of manslaughter in the first degree.

Appellant's counsel in brief cogently urges that the defendant was due the general affirmative charge.

It affirmatively appears that all of the evidence introduced in the trial below is not included in the record on this appeal; nor have the omitted exhibits been certified to this court. Among these are some photographs of the locale of the scene of the alleged crime.

Throughout the trial various witnesses were interrogated while these pictures were displayed, and many questions were directed in an effort to disclose detailed description and explanation of what the photographs depicted.

This clearly demonstrates the wisdom of the rule which provides that all of the evidence must be before the appellate courts before the propriety vel non of the refusal of the general affirmative charge can be reviewed. Alabama Terminal R. Co. v. Benns, 189 Ala. 590, 66 So. 589; Bates v. Louisville & N. R. Co., 21 Ala.App. 176, 106 So. 394; York v. State, Ala.App., 39 So.2d 694.

This rule applies with equal force to a review of the action of the court below in denying the motion for a new trial on the ground that the verdict is contrary to the great weight of the evidence. Mobile City Lines v. Alexander, 249 Ala. 107, 30 So.2d 4; York v. State, supra.

Without dispute in the evidence the defendant killed one Carson Miles by shooting him with a shotgun. With the exception of the two participants in the affray, there were no eyewitnesses to the homicide.

The appellant testified that he went, in his automobile, to the home of a Negro man to attend to a business matter. After the visit in the house and when he re- turned to his car, which was parked in the yard nearby, he observed another automobile which was also parked a short distance away. Someone called from the latter vehicle, and the appellant took his shotgun and flashlight from his own car and proceeded toward the unidentified person in response to the call. The defendant's testimony at this point is: "I didn't recognize the voice nor the car, but I taken my gun and flashlight from my car, and holding myself a light to walk by, went out to this strange car, approaching it facing it on the right-hand side, and as I came to the steering wheel there, expecting someone to say something, or do something another, still there was no noise of no description, and so seconds passed, and my thoughts went and come, where the person was, what they were up to, and such like. So all of a sudden I heard a noise at the back of the car, just as someone would take their fist, palm of the hand or elbow and bump a car body, and at that I noticed a man was coming from underneath the back of the car, getting on his feet, and he replied the words, 'I will get you, you son-of-a-bitch', and by that time he was on his feet, and it just sounded like several shots all in together, and I turned and went back to my car."

A fair interpretation of the position of the prosecution is that the accused became enraged because of suspected amorous conduct between the deceased and appellant's wife and that he followed the deceased to the place of the homicide and there shot him.

It is apparent from the scant delineation of the evidence which we have set out that the matter of motive became a very material inquiry.

The record discloses that about fourteen months prior to the date of the homicide the appellant filed a suit for divorce, charging his wife with adultery "with various men whose names are not known to your complainant."

At the time of the trial of the case at bar this divorce proceeding was still pending, and the appellant and his wife were living together. We gather from the evi-

dence that no testimony had been taken in support of the bill for divorce.

Over general objections the appellant was required on cross-examination to answer that he had filed said divorce on said grounds. Against the same objections the court permitted the State to introduce in evidence the original bill of complaint in the divorce case.

■ As to the latter ruling we hold that if proof that appellant had filed for divorce against his wife was pertinent and admissible as tending to show motive for the homicide, then the admission in evidence of only the original complaint in that cause was merely cumulative of an admitted fact and was error without injury. Stallings v. State, 249 Ala. 1, 32 So.2d 233; Weems v. State, 222 Ala. 346, 132 So. 711; Gettings v. State, 32 Ala. App. 644, 29 So.2d 677.

It should be noted that we are here dealing with *only* the introduction of the original bill of complaint.

In connection with the insistence that the evidence relating to the divorce matter was not admissible, it is pointed out in brief of counsel that the bill does not charge any named person with adulterous relations with appellant's wife and therefore in no event could motive for the homicide be cast in this indirect manner.

The wife of the accused testified that *prior and subsequent* to the time the divorce bill was filed the decedent, on numerous occasions, made unsuccessful attempts to "date her." Many of these incidents occurred while her husband was away from home in military service. The divorce proceedings were instituted after the appellant was discharged from the army. Mrs. Senn testified also that she told her husband about these proposals and solicitations and he replied that "he would like for him to tend to his business; he was at home with us then."

There was also testimony given by some of the relatives of the appellant that the deceased had importuned them to assist him in making dates and contacts with the wife of the defendant. This information was also conveyed by them to the appellant.

The record does not disclose that any person other than the deceased was suspected of attempts at adulterous relations with Mrs. Senn.

Appellant's wife testified that about twenty minutes prior to the time she heard the gun fire at the scene of the killing the deceased left her home after again making amorous approaches to her. She stated, however, that her husband was not at home at the time and that he did not return until after the fatal shooting.

We have endeavored to set out the tendencies of this aspect of the evidence in some detail in order that fair and full factual foundation may be laid for our review of the matter of instant concern.

■ "Any evidence which has a legitimate bearing on the question of motive is as a general rule admissible, although remote. It must have such a legitimate bearing, but the mere fact that the alleged motive is not correlative to the crime committed does not require the evidence thereof to be excluded, for, although weak and inconclusive in itself, it is a circumstance to be considered in conjunction with others, which tend to implicate accused." 40 C.J. S., Homicide, § 227, page 1152. See also, 26 Am.Jur., Homicide, Sec. 323, p. 373.

"As to showing a motive for the commission of an offense the law says it is not necessary in order to prove the crime; but evidence of motive is always admissible. In other words, it is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense. It may spring from the lust of gain, or the gratification of an unlawful passion, from animosity, ill will, hatred, or revenge. The extent or magnitude of such motive, whether great or small, is also a proper inquiry. The rulings of the court upon this subject are free from reversible error." Earnest **v.** State, 21 Ala.App. 534, 109 So. 613, 614.

"The fact that accused and deceased were rivals for or courting the same woman or enjoyed her illicit favors, or other facts tending to establish jealousy are admissible to show motive. So it may be

shown that accused believed that his wife or mistress was being estranged from him by deceased, that his advances were spurned, that deceased terminated an illicit relationship previously existing between herself and accused, or that deceased was an obstacle in the way of accused's marriage." 40 C.J.S., Homicide, § 231, p. 1162.

"It is always relevant to put in evidence of jealousy and unrequited love, and the facts on which they rest, for the purpose of showing motive in homicide." People v. Laures, 289 Ill. 490, 124 N.E. 585, 589. See also, 2 Wharton on Crim. Evidence, 10th Ed., p. 1544-1693.

After diligent search we have been unable to find a case in our jurisdiction or elsewhere which has reviewed the question in the form in which it appears in the instant case. Counsel who have filed briefs apparently have encountered a similar experience.

There are many authorities which bear logical analogy.

In the case of Southern Home Ins. Co. of the Carolinas v. Boatwright, 231 Ala. 198, 164 So. 102, our Supreme Court held that an original bill for divorce and alimony filed against plaintiff by his wife was properly allowed in evidence on the question of motive for the destruction of the property which the insurer contended the plaintiff wilfully burned.

In the case of Marler v. State, 68 Ala. 580, it appears that the defendant had filed a divorce proceeding against his wife and the deceased was supposed to be a hostile witness against the interests of the husband in that cause. The court observed: "The court below properly refused to exclude the testimony of the elder Redman, detailing a conversation between the defendant, Marler, and himself in reference to Marler getting a divorce from his wife, and desiring to marry witness' daughter. This evidence tended to prove an eagerness on defendant's part to obtain the divorce, and, therefore, to show a motive for killing deceased." See also, Marler v. State, 67 Ala. 55, 42 Am.Rep. 95.

In the case of State v. Gore, 207 N.C. 618, 178 S.E. 209, 210, the Supreme Court of North Carolina had this to say: "The exception to the evidence tending to show a quarrel between the defendant and his wife is untenable, as such evidence was competent to show both motive for the crime charged and to corroborate the witness Ben Johnson, who testified that the defendant told him that the deceased was 'going with his wife' and he 'didn't like it,' and gave this as one of the reasons for wanting him 'to knock him out.'"

In the case of People v. Weston, 169 Cal. 393, 146 P. 871, 872, the deceased and the defendant were rivals for the affections of one Sarah French, who was living with the latter as his mistress. The court held: "Certain evidence given by Nettie Dykes, Frank Dykes, and Sarah French, as to the relations existing between defendant and Sarah French and as to certain quarrels between them, was all admissible, in our opinion, on the question of motive."

Our courts have had occasion to review homicide and assault cases in which one spouse was charged with killing or assaulting the other, and in which cases the matter of divorce proceedings between the two parties was involved.

Justice Foster writing for the court in Marshall v. State, 219 Ala. 83, 121 So. 72, 76, 63 A.L.R. 560, declared: "Defendant was required to answer that she had sued deceased twice for a divorce. We think it not improper to prove such facts as tending to show a motive for the offense." See also, Jarrell v. State, post, p. 256, 50 So.2d 767; Vaughan v. State, 25 Ala.App. 226, 144 So. 458.

It must be admitted that these authorities are not dealing with the question of instant concern in its exact factual form. Nevertheless, they do recognize the rule that proof can be made of the filing of a divorce proceeding to show motive.

When all the circumstances in connection with the case at bar are taken into account, it appears clear to us that to show motive for the homicide there was evidential value and potency in the proof that the accused had filed a bill for divorce against

his wife in which he charged her with adultery.

This disposes of all presented questions which merit our comment.

It is ordered that the judgment of the court below be affirmed.

Affirmed.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.